IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>ELWYN "JAKE" HAS THE EAGLE, SR.,<br><br>Defendant/Movant. | CR-10-38-GF-SEH-RKS<br><br>**FINDINGS AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION** |

**I. Synopsis**

Mr. Has the Eagle moved to have his sentence vacated for ineffective assistance of counsel. Mr. Has the Eagle contends that his attorney failed to properly advise him about a plea agreement offer. Consequently, Mr. Has the Eagle rejected the offer, was convicted at trial, and sentenced to a longer term than he might have received under the agreement, if the sentencing judge adopted the United States attorney's proposed recommendation.

1

The evidence indicates that Mr. Has the Eagle insisted on going to trial and did not intend to accept a plea agreement. His attorney provided him with the plea agreement offer and invited discussion about it. Mr. Has the Eagle did not show that his attorney's conduct fell below an objectively reasonable standard of representation in light of Mr. Has the Eagle's own insistence on trial. The motion should be denied.

## II. Jurisdiction

Mr. Has the Eagle, a federal prisoner, moved the court to vacate, set aside, or correct his sentence, as he is authorized to do by 28 U.S.C. § 2255(a). This court has subject matter jurisdiction because the motion raises a question of federal law. 28 U.S.C. § 1331. This court also has personal jurisdiction, as the United States is appropriately named as the respondent. 28 U.S.C. § 2255(b). The motion was properly filed in the District of Montana, where Mr. Has the Eagle was sentenced. Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir. 2006). The case was referred to the undersigned to appoint counsel and conduct an evidentiary hearing pursuant to 18 U.S.C. § 3006A(a)(2)(B) and 28 U.S.C. § 636. CD 102.

## III. Status

A jury convicted Mr. Has the Eagle of obstructing justice and two counts of witness tampering after a trial in 2010. CD 54. The charges arose from conduct in

an underlying case in which Mr. Has the Eagle's son was federally charged and convicted on multiple counts of first-degree murder. CD 33. Mr. Has the Eagle was convicted of pressuring a key witness to give false testimony in the case, under threat of harm if she did not. CD 33. Attorney Jeremy Yellin represented Mr. Has the Eagle before and during the trial.[1]

Mr. Has the Eagle was offered a plea agreement, but did not accept it and went to trial on the charges. He was convicted on all three counts. CD 54. Mr. Has the Eagle was sentenced in November 2010. The guideline sentencing range for Mr. Has the Eagle's offenses was 97 to 120 months. The sentencing judge sentenced him to 108 months imprisonment on each of the three counts, all to run concurrently. CD 70. He appealed both the conviction and sentence, and both were affirmed by the Ninth Circuit in a memorandum opinion. CD 88. The Ninth Circuit held that "[i]n light of all the relevant factors, Has the Eagle's sentence was not substantively unreasonable." CD 88, p. 4.

On May 29, 2012, Mr. Has the Eagle filed his § 2255 motion, asserting several claims. CD 90. He was ordered to clarify one claim, CD 92, and did so, CD 93. The clarified claim alleged that Mr. Yellin was ineffective as counsel

---

[1] Mr. Has the Eagle was briefly represented by other attorneys prior to Mr. Yellin. Mr. Yellin represented Mr. Has the Eagle after the plea agreement was proposed.

because he convinced Mr. Has the Eagle to refuse the plea agreement offer, advising Mr. Has the Eagle that he was likely to be acquitted at trial. CD 93. All the claims were dismissed, except the allegation of Mr. Yellin's ineffective assistance regarding the plea agreement. CD 95. The United States was ordered to answer that claim, CD 96. The United States filed the answer and requested an evidentiary hearing. CD 97. Mr. Has the Eagle was appointed an attorney, Ms. Jennifer Guittari, to assist him in the hearing. CD 103. The undersigned held the hearing on July 10, 2013. CD 107.

### III. Facts

Prior to trial, the United States offered Mr. Has the Eagle a written plea agreement by submitting the proposal to Mr. Yellin. CD 97-1. Under the agreement, Mr. Has the Eagle would have plead guilty to a single count, and the United States would have recommended dismissal of the remaining counts, and a 36-month prison sentence. CD 97-1. Mr. Yellin mailed a copy of the proposal to Mr. Has the Eagle, along with a brief letter. The letter stated "[Mr. Yellin]" is not advising you to accept this agreement or not accept it. Our office is obligated to send it to you for further review. Upon your receipt and review, please contact our office to discuss." CD 97-1, p. 1.

**Evidentiary hearing**

Mr. Has the Eagle was present at the evidentiary hearing, with Ms. Guittari. Assistant United States Attorney Carl Rostad represented the United States. Mr. Has the Eagle and his wife, Tina Has the Eagle, testified on his behalf. Mr. Yellin was called as a witness by the United States.

**Mr. Has the Eagle**

Mr. Has the Eagle testified that although he formally attended school only through the eighth grade, he later earned a General Equivalency Diploma. Though he spoke a Native American language as a child, Mr. Has the Eagle testified that he is fluent in English, but said his reading comprehension is "not too good." Mr. Has the Eagle testified that he received the 14-page plea agreement offer from Mr. Yellin, but only reviewed it for about 30 seconds. Mr. Has the Eagle testified that he did not understand the proposed agreement well, but the record reflects no effort by Mr. Has the Eagle to seek clarification.

Mr. Has the Eagle testified that he met with Mr. Yellin multiple times after he received the plea agreement offer. Mr. Has the Eagle said he brought up the offer in two of those meetings, but Mr. Yellin did not explain the proposal to him or discuss the merits of a plea agreement. Instead, according to Mr. Has the Eagle, the meetings focused on trial preparation.

Mr. Has the Eagle testified that he never told Mr. Yellin he wanted to accept the plea agreement. Mr. Has the Eagle testified that he is not actually guilty of the offenses charged.

**Tina Has the Eagle**

Tina Has the Eagle testified that Mr. Has the Eagle struggles to understand documents and abstract concepts. She said that she often explains such things to him, and he is able to understand her explanations. She testified that she is pursuing a criminal justice degree, and that she participated in this case by assisting Mr. Has the Eagle and attending most of his meetings with Mr. Yellin.

Mrs. Has the Eagle testified that she was aware of the plea agreement offer, but never discussed in detail with Mr. Has the Eagle. She testified that the plea agreement was only briefly mentioned in their meetings with Mr. Yellin, but not discussed. She testified that Mr. Yellin told them they were going to trial, not accepting a plea agreement, because they could beat the charges. She testified that she and Mr. Has the Eagle agreed with the decision to go to trial. Mrs. Has the Eagle testified that she had little respect for the prosecution's principal witness, and did not consider the witness credible. However, she testified that she believes Mr. Has the Eagle would have accepted the plea agreement if Mr. Yellin had explained it.

**Mr. Yellin**

Mr. Yellin testified Mr. Has the Eagle repeatedly insisted on fighting the charges, and consistently told Mr. Yellin that he would not accept a plea agreement. Mr. Yellin testified that he focused on trial preparation before and after receiving and transmitting the proposed plea agreement – rather than plea negotiations – because Mr. Has the Eagle and his family were determined to go to trial.

Mr. Yellin testified that he may nevertheless have read and explained the proposed plea agreement to Mr. Has the Eagle, but could not confidently remember having done so.

Mr. Yellin testified that he considered it unlikely that the presiding judge would have accepted the proposed plea agreement's recommended sentence. That is, Mr. Yellin believed that if Mr. Has the Eagle had signed the agreement and plead guilty, he still would have been sentenced to substantially more than three years imprisonment. He doubted the presiding judge would substantially depart downwardly from the guidelines sentencing range under the facts of the case.

### IV. Standards

The Sixth Amendment right to effective assistance of counsel applies to plea agreement negotiations. Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). To be

"effective" in that context, a defendant's attorney must communicate to the defendant any formal plea agreement offer from the prosecution that may be favorable to the defendant. Missouri v. Frye, 132 S.Ct 1399, 1408 (2012). Once the offer is communicated, the defendant is also entitled to effective assistance in deciding whether to accept it. Lafler, 132 S.Ct. at 1387.

To prevail on an ineffective-assistance claim, Mr. Has the Eagle must show 1) that Mr. Yellin gave ineffective assistance in regard to the plea agreement, 2) but for the ineffective assistance, Mr. Has the Eagle would have accepted the agreement, 3) a reasonable probability the court would have accepted the terms of the agreement, and 4) a reasonable probability the sentence Mr. Has the Eagle would have received pursuant to the agreement would have been less severe than the judgment actually imposed. Lafler, 132 S.Ct. at 1385. To satisfy the "ineffective assistance" element, Mr. Has the Eagle must show that Mr. Yellin fell below an objective standard of reasonableness. Lafler, 132 S. Ct. at 1384; Strickland v. Washington, 466 U.S. 668, 688 (1984).

### V. Analysis

**Defendant's argument**

Ms. Guittari noted that two witnesses – Mr. and Mrs. Has the Eagle – testified that Mr. Yellin never discussed the plea agreement at all, while one

witness – Mr. Yellin himself – testified that he may have discussed the offer but couldn't be sure. Ms. Guittari argued that the evidence supported Mr. Has the Eagle's contention that the offer went completely undiscussed. Although Mr. Has the Eagle did not believe he was guilty of the charged crimes, he was still entitled to effective representation. That should have included a meaningful explanation of the plea agreement offer, Ms. Guittari argued. If Mr. Has the Eagle had the benefit of such a explanation, he likely would have accepted the offer and received a more favorable sentence, she argued.

**United States' argument**

Mr. Rostad noted that Mr. Yellin did provide a copy of the plea agreement offer to Mr. Has the Eagle. Mr. Has the Eagle did not believe he was guilty and wanted to go to trial. Therefore it would have been illogical – and possibly improper – for Mr. Yellin to persuade Mr. Has the Eagle to accept the offer, Mr. Rostad argued. Considering Mr. Has the Eagle's desire to go to trial, Mr. Yellin's provision of the offer and invitation to discuss its terms satisfied the objective standard for effective representation, Mr. Rostad argued.

**Conclusion**

Mr. Has the Eagle did not show that Mr. Yellin was ineffective.

Mr. Yellin's testimony that Mr. Has the Eagle was determined to go to trial

is credible.  Mr. Yellin appeared to be a candid, honest witness.  And the testimony was corroborated throughout the hearing: Mr. Has the Eagle himself testified that he never believed he was guilty, and Mrs. Has the Eagle testified that the family was unified in their desire to fight the charges at trial.

Mr. Has the Eagle testified that he would have accepted the plea agreement if it had been better explained to him.  However, Mr. Has the Eagle was a patently non-credible witness.  His testimony was entirely self-serving.  He often reversed his answers in obvious attempts to give whatever answer would help his case.  His testimony was also inconsistent.  His statement that he would have plead guilty in accordance with the offer is at odds with his testimony that he wasn't guilty of the charges.  He testified that he spent only 30 seconds reviewing the offer, reflecting a lack of interest in pursuing it.  His testimony was also inconsistent with his motion and supporting documents.  In his clarification, CD 93, Mr. Has the Eagle stated that Mr. Yellin advised him to reject the offer because the United States had insufficient evidence to prove the charges. In the hearing, Mr. Has the Eagle testified that Mr. Yellin did not discuss the proposal with him at all.

Mrs. Has the Eagle opined that Mr. Has the Eagle would have accepted the plea agreement if it had been better explained to him.  The evidence does not support her opinion.  She testified that after they received the offer, she attended a

meeting with Mr. Has the Eagle, their daughter, and Mr. Yellin, and all were in consensus that they should go to trial. She explained that they did not consider the primary witness against her husband to be credible. She testified that she helped her husband throughout the case and explained things to him that he didn't understand. However, despite her education and relative sophistication, she never even discussed the plea agreement offer with Mr. Has the Eagle. The did not seriously consider accepting the offer.

    Mr. Has the Eagle had little or no interest in the plea agreement offer. Mr. Has the Eagle spent only 30 seconds reviewing the offer, and did not discuss it with his wife. Mr. Has the Eagle wanted to go to trial, and communicated that desire to Mr. Yellin. Mr. Yellin was still obligated to provide the offer to Mr. Has the Eagle, and did so. The letter accompanying the offer neither encouraged nor discouraged Mr. Has the Eagle from accepting the offer, but invited discussion about it. Mr. Yellin met with Mr. Has the Eagle many times, including on multiple occasions after Mr. Has the Eagle received the offer. The meetings provided an opportunity for Mr. Has the Eagle to ask about it. His failure to accept Mr. Yellin's invitation to further discuss the offer is fully consistent with his refusal to consider a plea agreement. In light of Mr. Has the Eagle's lack of interest in plea negotiations, Mr. Yellin did not fall below a reasonable standard when he did not

11

revisit the offer with Mr. Has the Eagle. Mr. Has the Eagle did not prove the first element of his claim.

For the reasons set forth above, Mr. Has the Eagle also did not satisfy the second element of the test – showing that he would have accepted the offer. Mr. Has the Eagle did not introduce evidence – except hindsight – to show that additional discussion or explanation would have prompted him to accept the agreement. Testimony at the evidentiary hearing established that Mr. Has the Eagle, not Mr. Yellin, insisted on taking the case to trial.

Additionally, Mr. Has the Eagle did not satisfy the third element - that there is a reasonable likelihood court would have accepted the terms of the plea agreement. At the hearing, Mr. Has the Eagle testified that he still does not believe that he is guilty of the charges. A critical term of the proposed plea agreement was that Mr. Has the Eagle would plead guilty to one count. A court cannot accept a guilty plea unless it is voluntary and supported by a factual basis. Fed. R. Crim. P. 11(b)(2), (3). Thus, Mr. Has the Eagle has not shown a probability that the court would have accepted the terms of the agreement.

Finally, Mr. Has the Eagle did not fulfill the fourth element; he did not show a reasonable likelihood that the sentence he would have received under the agreement was substantially more favorable than the sentence he did receive. The

proposed plea agreement included on a recommendation that Mr. Has the Eagle be sentenced to 36 months imprisonment. That recommendation was not binding on the sentencing judge, and Mr. Has the Eagle adduced no evidence that the recommendation would have been adopted. In fact, adopting the recommendation would have required the sentencing judge to depart substantially downward from the guideline sentencing range. The defendant threatened to harm a principal witness in a murder trial if she did not lie under oath. He offered no explanation as to why the sentencing judge would have departed downward under those circumstances. In fact, the sentencing judge ultimately sentenced Mr. Has the Eagle to 108 months. The Ninth Circuit Court of Appeals agreed that the 108-month sentence was reasonable. Mr. Has the Eagle did not show a reasonable likelihood that the judge would have made a substantially different decision if the plea agreement had been accepted.

Mr. Has the Eagle was not deprived of his right to effective assistance of counsel during plea negotiations. His motion should be denied.

The court **FINDS:**

1. Mr. Has the Eagle expressed to Mr. Yellin a firm desire to seek acquittal rather than accept a plea agreement offer.

2. Mr. Yellin provided Mr. Has the Eagle with the plea agreement offer

at issue here, and gave Mr. Has the Eagle the chance to discuss the terms of the offer.

3. Mr. Yellin's conduct in regard to plea negotiations did not fall below an objectively reasonable standard.

4. Mr. Has the Eagle did not show that he would have accepted the plea agreement offer in any event.

5. Mr. Has the Eagle did not show that the court would have accepted the terms of the plea agreement, which included Mr. Has the Eagle pleading guilty to one count.

The court **RECOMMENDS:**

1. Mr. Has the Eagle's Motion to Vacate Sentence, CD 90, should be DENIED.

Dated the 19th day of July, 2013.

_____
Keith Strong
United States Magistrate Judge